UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

v.                                    Case No. 19-cr-047-SM-01

Terray Morrison

**REPORT AND RECOMMENDATION**

Before the court is defendant Terray Morrison's "Emergency Motion for Release and Self-Surrender under 18 U.S.C. § 3142(f) and/or 18 U.S.C. § 3142(i)" (Doc. No. 294).  Mr. Morrison, who has a history of chronic asthma, is in pre-sentencing detention at the Strafford County Department of Corrections ("SCDOC"), where there is an ongoing COVID-19 outbreak.  He tested positive for COVID-19 on December 19, 2019 and is currently quarantined in the SCDOC Medical Unit in stable condition.  In his emergency motion, he seeks to be released pending sentencing to live with his five-year old daughter in the Manchester apartment of his daughter's aunt, who he asserts would serve as his third-party custodian.  The government objects.

The court held a hearing via video conference on Mr. Morrison's emergency motion on December 22, 2020.[1]  The matter

---

[1] An in-person hearing did not occur on December 22, 2020, due to the health and safety precautions taken in response to the COVID-19 pandemic.  See Standing Order ADM-1, 20-35 (Dec. 8, 2020); Standing Order ADM-1, 20-25 (July 24, 2020).  At the

generally proceeded upon offers of proof.  SCDOC Medical
Administrator Tracy Warren, RN, appeared as a witness.  She was
allowed to testify via telephone without video, after counsel
consented to that procedure.

### Background

Three hearings relating to pretrial detention were held in
this case prior to the entry of Mr. Morrison's guilty plea on
December 1, 2020: (1) the initial detention hearing on March 19,
2019, which resulted in an order that he be detained pretrial,
see Mar. 22, 2019 Order (Doc. No. 47); (2) a December 18, 2019
hearing on Mr. Morrison's (first) motion to reopen, which was
denied, see Feb. 4, 2020 Order (Doc. No. 158); and (3) a March
30, 2020 hearing on a second motion to reopen, which resulted in
the April 24, 2020 Order (Doc. No. 218) (Johnstone, Mag. J.),
ordering him detained, and a May 27, 2020 Order (McAuliffe, J.),

---

hearing, Mr. Morrison waived his right to an in-person hearing
and consented to a hearing by videoconference.  The hearing was
listed on the public docket on the court's website, and public
access to the hearing was available by video in accordance with
the court's Standing Order ADM-1, 20-7 (Mar. 23, 2020).  The
court made findings regarding the limitations on in-person
public access on the record.  See Dec. 22, 2020 Public Access
Findings (Doc. No. 295).  The court's Standing Orders relating
to COVID-19 are available at http://www.nhd.uscourts.gov/court-
response-coronavirus-disease-covid-19.

denying defendant's motion to revoke that detention order.  Mr.
Morrison filed an interlocutory appeal of that decision, and the
First Circuit affirmed that order.  See United States v.
Morrison, No. 20-1578 (1st Cir. Aug. 10, 2020) (Doc. No. 265).

The First Circuit characterized the evidence for and
against detention in March-May 2020, as follows:

> Considerations offered in support of Morrison's request for
> pretrial release include the lack of violence in his
> criminal record; his family and community ties; his
> participation in therapeutic programming and rehabilitation
> activities; the needs of his young daughter (who recently
> lost her mother); and his risk of Covid-19 infection as an
> asthmatic in a jail setting.  Opposing considerations
> offered by the government include the strength of the
> evidence described by the government in its brief;
> Morrison's prior offense of illegal gun possession; a prior
> parole violation; two occasions of bringing along his young
> daughter while transacting drugs; and a history of travel
> abroad in support of drug activity that indicates a
> potential for flight.

Id., slip op. at 1 (Doc. No. 265).  The First Circuit found that
the detention order was supported by "[t]he overall balance of
considerations, including a risk from Covid-19" deemed to be
"real but nowhere near imminent" at that time.  Id., slip op. at
2 (Doc. No. 265).

On December 1, 2020, Mr. Morrison pleaded guilty to Count
1s, charging him with conspiring to distribute and to possess
with intent to distribute controlled substances (cocaine and
more than 280 grams of cocaine base), in violation of 21 U.S.C.

3

§§ 846, 841(a), and 841(b)(1)(A)(iii).  His plea agreement (Doc.
No. 289) includes a binding stipulation, pursuant to Fed. R.
Crim. Proc. 11(c)(1)(C), that 120 months' imprisonment is an
appropriate sentence.  The court accepted defendant's guilty
plea, while deferring acceptance of that sentence
recommendation, and ordered Mr. Morrison detained pending
sentencing, which is scheduled for March 10, 2020.  See Dec. 1,
2020 Change of Plea H'g.

## Standard

    The crime to which Mr. Morrison has pleaded guilty subjects
him to mandatory detention pending sentencing, pursuant to 18
U.S.C. § 3143(a)(2).  The government and defense counsel
concurred in the December 22, 2020 hearing in this case that 18
U.S.C. § 3145(c) could allow for Mr. Morrison's release pending
sentencing if he is eligible and meets the "exceptional reasons"
standard established in that statute.[2]

    Section 3145(c) provides, in pertinent part, as follows:

---

[2]See United States v. Sosa, No. 19-cr-39-02-JD, 2020 U.S.
Dist. LEXIS 80884, at *2, 2020 WL 2227038, at *1 (D.N.H. Apr.
21, 2020) (noting that district courts have split on whether
§ 3145(c) applies in district court proceedings on only on
appeal and then assuming, without deciding, that district court
could release defendant pending sentencing under § 3145(c),
where government did not dispute that issue), R&R approved, 2020
U.S. Dist. LEXIS 80151, 2020 WL 2219173 (D.N.H. May 6, 2020).

> A person subject to [mandatory detention under section
> 3143(a)(2)] . . . who meets the conditions of release set
> forth in section 3143(a)(1) . . . may be ordered released
> . . . if it is clearly shown that there are exceptional
> reasons why such person's detention would not be
> appropriate.

18 U.S.C. § 3145(c).  Section 3143(a)(1), in turn, allows for

release upon "clear and convincing evidence that [the defendant]

is not likely to flee or pose a danger to the safety of any

other person or the community if released," id. § 3143(a)(1).

Federal Rule of Criminal Procedure 46(c) puts the burden on

defendant to establish those matters.  Therefore, applying

§ 3145(c), this court considers whether Mr. Morrison has

established by clear and convincing evidence that he is not

likely to flee or pose a danger to any person or the community

if released, and whether he has clearly shown that "exceptional

reasons" would make his detention inappropriate.  See United

States v. Weiner, 972 F.2d 337, 1992 U.S. App. LEXIS 28794, at

*8, 1992 WL 180697, at *1 (1st Cir. July 31, 1992) (unpublished

table decision); United States v. Farlow, 824 F. Supp. 2d 189,

193 (D. Me. 2011).


**Discussion**

Mr. Morrison moves for release pending sentencing based on:

(1) his asthma, the COVID-19 outbreak at the SCDOC, his COVID-19

5

positive status, the absence of a physician on staff at the
SCDOC and the SCDOC Medical Unit's inability to provide him with
state-of-the-art COVID-19 treatment, and uncertainty regarding
the risk that he could be re-infected if he remains in
detention; (2) his Rule 11(c)(1)(C) plea agreement and the time
he has served to date, which he would lose if he did not appear;
and (3) his commitment to taking advantage of rehabilitative
programming at the SCDOC.  The government objects, citing the
factors that previously led this court to order Mr. Morrison
detained, the court's earlier rejection of Mr. Morrison's
commitment to rehabilitative programming as grounds for
releasing him, the heightened monitoring of his condition and
level of care he has received at the SCDOC since testing COVID-
19 positive, the difficulties he may face receiving the same
level of care if released, and the elevated risks to the
community he could present if released while infected with
COVID-19.

I.   Flight Risk

     The factors pertinent to flight risk that supported this
court's pretrial detention orders included Mr. Morrison's prior
arrests and convictions on drug and firearms charges, his
reported net worth/history and cash on hand at the time of his

arrest that were inconsistent with his reported employment history, his multiple addresses, and history of drug use and active substance use.  <u>See</u> Feb. 4, 2020 Order (Doc. No. 158). Mr. Morrison has since pleaded guilty to a drug trafficking charge that carries a mandatory minimum of ten years.  If the sentencing recommendation in his plea agreement is accepted, he expects to serve approximately eight years in prison, a disposition he would sacrifice if he were to flee.  In light of Mr. Morrison's record that included criminal activity while on supervision, and his ensuing involvement in the multi-defendant drug-trafficking conspiracy at issue to which he has pleaded guilty, this court is not persuaded that the prospect of incarceration is a strong deterrent for Mr. Morrison. Furthermore, the sentence to which he stipulated remains substantial.  And the court could reject that recommended ten-year sentence, putting Mr. Morrison back in jeopardy of facing an even longer sentence, if convicted.  Those factors favor detention at this time.

    The new evidence relating to Mr. Morrison's current health condition does not mitigate the court's concerns for risk of flight.  At the time of the December 22, 2020 hearing, Mr. Morrison appeared to be experiencing few COVID-19 symptoms.  He was using a self-administered inhaler and taking a prescribed

taper of prednisone to address his complaints of shortness of breath.  The evidence regarding his symptoms and pre-existing chronic asthma did not show that his health condition would substantially impair his ability to travel, if he were released. And his COVID-19 positive-status could impair the ability of probation officers to maintain personal contact with him and enter his residence so long as he is quarantined, further amplifying the risk of flight.  Under such circumstances, Mr. Morrison has not carried his burden of demonstrating through clear and convincing evidence that he would be likely to appear for sentencing if he were released.

II.  Danger

The court previously found that the weight of the evidence, the nature of the drug-trafficking offense, Mr. Morrison's criminal history (including convictions for drug crimes and a firearms offense), as well as surveillance in connection with the drug trafficking conspiracy -- revealing he engaged in drug-transactions where his four-year old daughter resided and had brought her along on drug deals -- all raised substantial concerns that Mr. Morrison would present a danger to others if released.  See Feb. 4, 2020 Order (Doc. No. 158).  The entry of

Mr. Morrison's guilty plea does not lessen the court's concerns in that regard.

Mr. Morrison has proposed that he would live with his young daughter and her aunt in the aunt's apartment in Manchester if released, and he reports that his mother, a nurse's assistant who works with COVID-19 patients in nursing homes, is committed to helping him take care of himself and maintain his health. Although the probation office has been unable to confirm the aunt's commitment to that plan, Mr. Morrison's counsel has represented that she would serve as a third-party custodian. Notably, the building where the aunt's apartment is located was the scene of a late-night party that ended with a shooting on October 31, 2020, although the aunt was not charged in connection with those incidents.

Defendant's proposal of location monitoring does not ameliorate the court's concerns regarding safety, and the incomplete information before the court regarding the proposed third-party custodian and her residence do not favor a finding that there is a diminished safety risk if Mr. Morrison were released at this time.  There is, additionally, no information before the court regarding the suitability of the proposed residence for housing Mr. Morrison, particularly if he must isolate himself from his daughter, her aunt, and others because

9

of his health condition or infection, and, conversely, no information suggesting that the apartment is set up in a way that would allow them to isolate themselves from him if he remains vulnerable to re-infection.  Furthermore, there are additional risks to the health and safety of probation officers and others in the community, if Mr. Morrison were released at this time, while he remains COVID-19 positive.  Under such circumstances, Mr. Morrison has not carried the burden of demonstrating that he is not likely to pose a danger to any person or the community if he were released pending sentencing. His emergency motion should be denied on that basis.

III. Exceptional Reasons

The court further considers whether Mr. Morrison has carried his burden of clearly showing that there are "exceptional reasons" why his detention pending sentencing would be inappropriate.  Such exceptional reasons may arise where there is "a unique combination of circumstances giving rise to situations that are out of the ordinary."  Weiner, 1992 U.S. App. LEXIS 28794, at *8, 1992 WL 180697, at *3.  "Personal reasons, such as caring for family members, being gainfully employed, and caring for young children with unique health problems are not extraordinary reasons."  United States v.

Loaiza, No. 18-cr-134-01-PB, 2018 U.S. Dist. LEXIS 207093, at *4, 2018 WL 6421657, at *2 (D.N.H. Nov. 20, 2018), R&R approved, 2018 U.S. Dist. LEXIS 206058, 2018 WL 6418894 (D.N.H. Dec. 6, 2018).  In addition, the existence of a Rule 11(c)(1)(C) plea agreement does not qualify as an exceptional reason for release under § 3145(c).  United States v. Jones, 452 F. Supp. 3d 258, 263 (W.D. Pa. 2020); United States v. Briggs, 577 F. Supp. 2d 435, 438 (D.D.C. 2008) ("there is nothing about entering a plea under 11(c)(1)(C) that is 'exceptional' because all defendants who enter such pleas face the same circumstances as Defendant").  A defendant's combination of medical conditions and the outbreak of COVID-19 in a detention facility may, however, create an "exceptional reason" favoring release under section 3145(c), if the risk of flight and danger to the community presented by defendant's release do not otherwise require continued detention.  See United States v. Cabrera, No. 3:16-cr-238 (SRU), 2020 U.S. Dist. LEXIS 122122, at *12 & n.7, 2020 WL 3963887, at *5 & n.7 (D. Conn. July 13, 2020) (expressing uncertainty whether COVID-19's effect at detention facility, combined with defendant's health conditions, could amount to "exceptional reasons," as risk of infection at facility was "under control and improving," but ultimately declining to resolve that issue because inmate did not satisfy requirements as to risk of flight

and danger to community); United States v. Laverty, No. CR 4:18-40020-TSH, 2020 WL 2308731, at *1, 2020 U.S. Dist. LEXIS 81466, at *2-3 (D. Mass. May 8, 2020) (defendant's untreated Hepatitis C infection and risk of COVID-19 spreading rapidly in prison population, warranted release where government did not contest lack of flight risk and lack of danger to community); United States v. Sosa, No. 19-cr-39-02-JD, 2020 U.S. Dist. LEXIS 80884, at *3, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020) ("COVID-19 pandemic and the defendant's medical issues" demonstrated existence of exceptional reasons, which merited release, where government did not dispute that issue), R&R approved, 2020 U.S. Dist. LEXIS 80151, 2020 WL 2219173 (D.N.H. May 6, 2020).

In this case, Mr. Morrison cites his COVID-19 infection and pre-existing asthma; the current outbreak of the disease at the SCDOC, a congregate living facility; the lack of state-of-the-art COVID-19 treatments at the SCDOC; the absence of a staff physician at the SCDOC; and the possibility of his reinfection as reasons why his continued detention is not appropriate. Nurse Tracy Warren, RN, the SCDOC Medical Department Administrator, testified that Mr. Morrison was one of thirty-three inmates at the SCDOC from the same housing unit who had tested positive for COVID-19 on or before the date of the hearing. He has been quarantined in the SCDOC Medical Unit

since December 19, 2020, the date he tested positive for the virus, last had a low-grade fever, and was short-of-breath. Pursuant to the SCDOC's COVID-19 protocols, inmates with certain pre-existing health conditions who test positive, and inmates testing positive and who exhibit symptoms of the illness, are transferred to the Medical Unit for further observation.  Those inmates stay in the Medical Unit for ten days after symptom-onset, a time period that may expire in Mr. Morrison's case no sooner than December 28, 2020.  Although Mr. Morrison had not been examined by a physician since he tested positive three days before the date of the hearing, Mr. Morrison was scheduled on the day after the hearing to be examined by the SCDOC's contract physician, who along with a contract physician's assistant, visit the SCDOC each week.  The doctor and physician's assistant are called by the nursing staff twice per day every day, and they have remote electronic access at all times to the SCDOC nursing staff's notes, updated twice to three-times daily, regarding his condition.  As long as Mr. Morrison remains in the Medical Unit, the facility's nurses monitor and record his vital signs, check his temperature, and assess his oxygen saturation two to three times daily (once per shift).  The SCDOC facility has twenty-four-hour nursing staff who can obtain doctor's orders over the phone and who are trained to provide low-level

medical care, and to identify urgent and emergent conditions that may require a doctor's attention or a hospital transfer.

Nurse Warren credibly characterized Mr. Morrison's condition as "stable" at the time of the hearing.  She testified that if his health declines, based on a trend in vital signs or a nursing assessment, such a decline would trigger a decision to get a doctor's input, as appropriate, or to make a decision in-house on an emergency basis to transfer the inmate to one of two area hospitals equipped with ICU beds.

Mr. Morrison, who presently lacks a relationship with any primary care physician outside of the SCDOC, has not shown that he would receive the same level of monitoring or better treatment for his asthma and COVID-19 illness if he were released from the SCDOC at this time.  There is no information suggesting he is not receiving any medical care he presently needs, and no information indicating he would not receive more intensive medical care or hospitalization if a change in his condition warrants it, while remaining at the SCDOC.  Mr. Morrison has thus failed to show that there are any exceptional reasons, relating to his health condition or any other circumstances, which make his continued detention pending sentencing not appropriate at this time.

14

**Conclusion**

For the foregoing reasons, the district judge should deny Mr. Morrison's Emergency Motion for Bail (Doc. No. 294).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Crim. P. 59(b)(2).  The fourteen-day period may be extended upon motion.  Id.  Failure to file objections within the specified time waives the right to appeal the district court's order.  Id.

Andrea K. Johnstone
United States Magistrate Judge

December 30, 2020

cc:  Michael J. Iacopino, Esq.
     Georgiana MacDonald, Esq.
     Anna Z. Krasinski, Esq.
     U.S. Probation
     U.S. Marshal